**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARTIN MICHAEL FERGUS, | ) | CASE NO. 5:20-CV-02612-CEH |
| | ) | |
| Plaintiff, | ) | CARMEN E. HENDERSON |
| | ) | UNITED STATES MAGISTRATE JUDGE |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | **MEMORANDUM OF OPINION AND** |
| | ) | **ORDER** |
| Defendant, | ) | |
| | ) | |

## I. Introduction

Plaintiff, Martin Michael Fergus ("Fergus" or "Plaintiff"), seeks judicial review of the final decision of the Commissioner of Social Security denying his applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 15). For the reasons set forth below, the Court REVERSES the Commissioner of Social Security's nondisability finding and REMANDS this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

## II. Procedural History

On July 16, 2015, Plaintiff, filed an application for Title II Disability Insurance Benefits. (ECF No. 12, PageID #: 253). He also filed for Title XVI Supplemental Security Income on September 30, 2015. (ECF No. 12, PageID #: 262). In both applications, Plaintiff alleged disability

beginning June 24, 2015, due to hydrocephalus.[1] Plaintiff's claims were initially denied on September 22, 2015 and again upon reconsideration on February 4, 2016. After a hearing (ECF No. 12, PageID #: 107-159), Administrative Law Judge ("ALJ") Paula J. Goodrich issued a decision determining that Plaintiff was not disabled on November 16, 2017. (ECF No. 12, PageID #: 90-106). On May 2, 2018, the Appeals Council denied review, rendering the ALJ's decision the final decision of the Commissioner. (ECF No. 12, PageID #: 83).

On July 3, 2018, Plaintiff filed a complaint with the United States District Court for the Northern District of Ohio (5:18-cv-01510-JRA). (ECF No. 12, PageID #: 927). The U.S. District Court issued an order for remand on September 27, 2019. (ECF No. 12, PageID #: 852). On November 15, 2019, the Appeals Council vacated the final decision of the Commissioner and remanded Plaintiff's case back to an ALJ for further proceedings per the U.S. District Court's order. (ECF No. 12, PageID #: 869).

On April 21, 2010, a hearing was held by ALJ Goodrich. (ECF No. 12, PageID #: 757). Subsequent to the hearing, the ALJ issued an unfavorable decision dated September 22, 2020. (ECF No. 12, PageID #: 736). The ALJ's decision became final on September 22, 2020, when the Appeals Council declined further review.  (ECF No.  12, PageID #: 733).

On November 20, 2020, Claimant filed his Complaint to challenge the Commissioner's final decision.  (ECF No. 1.)  The parties have completed briefing in this case. (ECF Nos. 16, 19, and 21). Claimant asserts the following assignment of error:

> The ALJ's RFC determination is unsupported by substantial
> evidence as after rejecting the opinions of the State Agency medical

---

[1] "Hydrocephalus is the buildup of fluid in the cavities (ventricles) deep within the brain."  https://www.mayoclinic.org/diseases-conditions/hydrocephalus/symptoms-causes/syc-20373604, last visited March 10, 2022.

> consultants and the opinion of Plaintiff's treating physician Yongjin
> Chen, M.D., constructed the RFC whole cloth.

(ECF No. 16 at 13).

## III. Background

### A. Relevant Hearing Testimony

At the hearing, Plaintiff testified that his hydrocephalus causes him to have left-sided weakness. (ECF No. 12, PageID #: 782). He also has a lot of forgetfulness and headaches that last all day, and can sometimes last for multiple days. (ECF No. 12, PageID #: 783). His headaches manifest as sharp, shooting pains that start from the back of the head into the front – "like a knife going through my head" – and cause his temper and irritability to increase. (ECF No. 12, PageID #: 784-785). He has problems with his vision. (ECF No. 12, PageID #: 784). His headaches also cause him to drop things due to weakness. (ECF No. 12, PageID #: 784). He becomes dizzy when going from a seated to a standing position. (ECF No. 12, PageID #: 788). He cannot stand for a long time as that makes him dizzy. (ECF No. 12, PageID #: 789). He has difficulty with sleeping and staying asleep. (ECF No. 12, PageID #: 789). It takes him two days to clean his apartment as cleaning provokes headaches and dizziness. (ECF No. 12, PageID #: 791-793). He testified that he can stand for an hour-and-a-half before needing to sit down and can sit for 15-20 minutes at a time. (ECF No. 12, PageID #: 794). He has trouble bending down to pick things up. (ECF No. 12, PageID #: 794). He has trouble grocery shopping due to memory difficulties. (ECF No. 12, PageID #: 794-795). He has a difficult time retaining information, especially with long term memory. (ECF No. 12, PageID #: 795). He has difficulty with focusing and reading due to vision problems. (ECF No. 12, PageID #: 798).

### B. Relevant Medical Evidence

The ALJ summarized Plaintiff's health records and symptoms:

Due to hydrocephalus, the claimant has had drainage shunts since age eight (1F/61). Secondary to a malfunction, he had revision surgeries in December 2014, a second shunt placed in April 2015, and then required intravenous anti-biotics for an acquired infection from the surgeries (1F/61, 9). His new shunt developed a malfunctioning valve, requiring still another surgery, on June 29, 2015 (2F/40).

[…]

Diagnostic scanning of the claimant's brain, dated October 7, 2015, described stable, remote agenesis of the corpus collosum, stable, small gliosis in the left occipital region, stable atrophy of the bilateral ventricles, and intact shunts, with otherwise unremarkable findings (3F/11). Against this "baseline" examination, findings have remained stable across the period relevant to this claim, including in May 2016 (5F/5), February (11F/6) and March 2017 (14F/1), October 2019 [though this study did note some non-specific white matter changes] (17F/16) and May 2020 (19F/4) [this assessment made no mention of white matter changes].

A spinal tap, on February 17, 2017, yielded a normal opening pressure, and innocuous analysis of the cerebrospinal fluid (11F/7).

The claimant's reports of headaches have waxed and waned, described as minor, and treatable with Ibuprofen in October 2015 (3F/7), resolved entirely, in May 2016 (5F/1), occasional, in February 2017 (20F/7), returning, in June 2017 (10F/1), and persistent and severe, in May 2020 (19F). However, the working diagnosis appears to remain that of headaches, with orthostatic change and high pressure component, issued on July 26, 2017 (9F/1). In May 2020, concern was expressed for possible over-drainage of his shunts, and referral was made (19F/4), but not yet followed. The claimant's treatment remains as suggested in July 2017, that is, use of the diuretic "Diamox" (10F/4), on which the claimant remains (19F/4), and to change positions slowly. The claimant has described two seizure-like episodes between June 2015 and October 2015, with none occurring between November 2014 and June 2015 (3F/5). However, electroencephalographic examination dated September 28, 2015 had been normal (3F/12) and video electroencephalographic examination, conducted between October 9, 2015 and October 14, 2015, depicted a single episode, which had no electroencephalographic correlate (3F/5). The claimant was weaned from his anti-epileptic drug by November 2015 (5F/4), (10F/1), and his treatment remains restricted to the diuretic "Diamox" (10F/4), on which the claimant remains (19F/4).

4

There have been no further seizures documented in the record.

The claimant's ocular malalignment, diagnosed on July 17, 2017 (13F/5), is thought to derive from a palsy of cranial nerve IV, caused by his hydrocephalus. Ancillary diagnoses are found at (5F/2). Treatment was initially planned to include use of prisms on his corrective lenses, followed by surgery, if necessary (13F/5). However, in the past, the claimant's diplopia had receded after periods of active hydrocephalus (7F/2). By July 2017, he was having episodes three-to-four times per week, and when tired (13F/2). By March 2020, he had had no recent episodes (18F/2). Because the claimant is asymptomatic, treatment is restricted to observation only, as of March 4, 2020 (18F/5). The claimant's visual field loss has remained stable throughout (7F/4), (13F/4), (18F/4). At worst, his visual acuity remains correctable to 20/25 on the right and 20/20 on the left, with full visual fields to finger counting (18F/2-3), as of March 4, 2020. Clinical examination dated May 27, 2016, noted no diplopia or dysconjugate gaze (5F/2) and an examination dated June 19, 2017, indicated full visual fields to confrontation and no nystagmus (10F/3).

Clinical examinations included in the record have consistently, albeit not universally, reported either mildly adverse, or normal findings, including one dated June 25, 2015, which reported no tenderness over the shunts, with a grossly non-focal neurological examination (1F/63), one dated October 9, 2015, which indicated positive ankle clonus, and hyper-reflexia, but in symmetric fashion, with negative Babinski testing, intact cranial nerves II-XII, normal motor and sensory function, normal cognitive function, including memory and concentration (3F/8-9), one dated June 19, 2017, which reported symmetric hyper-reflexia, with negative Romberg testing, intact cranial nerves II-XII, normal strength, tone, coordination, gait, memory, and intact language and speech (10F/3), or one dated October 10, 2019, which reported that the claimant was comfortable and cooperative, with intact cranial nerves II-XII, that he was attentive and able to concentrate, fluent in speech, with intact sensory function and coordination (17F/14).

The claimant reported use of narcotic pain medications early in the period relevant to this claim (1E/7), (8E/5), phased-out sometime after February 2016. He has reported use of the antiepileptic drug "Keppra", for quite a while longer than his medical records would support (1E/7), (16E) *compare with* (5F/4), (10F/1), but has been on the diuretic "Diamox" since July 2017 (16E), (27E), (19F/4), both to control the fluid in his brain, and for his headaches.

5

His treatment for his visual disorder has been comprised of contact lenses, and use of glasses with prisms in the evening hours (13F/2).

In terms of the claimant's alleged chronic obstructive pulmonary disease, he was so diagnosed on August 8, 2016 (4F/2). [ ]

There are at least two pulmonary function tests described in the record, but neither is re-produced in the evidence. The first, in March 2016, described a mild obstruction (12F/12). The second, in March 2017, was normal (12F/12).

(ECF No. 12, PageID #: 742-744).

### C.  Opinion Evidence

#### 1.  Dr. Yongjin Chen – Treating physician

On November 9, 2016, Dr. Yongjin Chen completed an "Abilities and Limitations for Self-Sufficiency" form concerning Plaintiff for the Portage, Ohio Job & Family Services.  (ECF No. 12, PageID #: 589).  He identified Plaintiff's diagnoses as chronic pulmonary obstructive disease ("COPD") and AV shunt hydrocephalus, and he indicated that Plaintiff's prognosis was poor. *Id.* In describing Plaintiff's functional limitations, Dr. Chen wrote that Plaintiff could not remember or focus well and that he felt dizzy when standing or walking. (ECF No. 12, PageID #: 589).  He opined that Plaintiff could stand/walk from two-and-a-half hours to four hours on a sustained basis and that he could sit for four-and-a-half hours to six hours on a sustained basis. (ECF No. 12, PageID #: 589). He further opined that Plaintiff could alternate standing/walking/sitting for four-and-a-half hours to six hours on a sustained basis and he could perform simple grasping and fine manipulation. (ECF No. 12, PageID #: 589).  Dr. Chen additionally opined that Plaintiff could lift less than 10 pounds and was not able to remember work locations or procedures, carry out instructions, maintain attention/concentration, perform activities within a schedule, sustain an ordinary routine, or interact with the general public. (ECF No. 12, PageID #: 589). Dr. Chen did not indicate whether Plaintiff could return to full time employment, training/GED, or the Portage

6

County WEP Program, and he selected the "no" box for releasing Plaintiff for part-time employment and basic hands-on stationary work only. (ECF No. 12, PageID #: 589).

**B. State Agency Reviewing Physicians**

On September 21, 2015, Dr. David Knierim opined that Plaintiff could lift/carry up to 20 pounds occasionally and 10 pounds frequently, stand/walk about six hours of an eight-hour workday, sit about six hours of an eight-hour workday, occasionally climb ramps/stairs, and never climb ladders/ropes/scaffolds. (ECF No. 12, PageID #: 166-168). Dr. Knierim also opined that Plaintiff's diplopia limited his depth perception to occasional and that he should at all times avoid all exposure to hazards such as unprotected heights and heavy machinery. (ECF No. 12, PageID #: 166-168). On January 29, 2016, Dr. Michael Hallet affirmed Dr. Knierim's opinions on reconsideration. (ECF No. 12, PageID #: 177-179).

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

4. The claimant has the following severe impairments: hydrocephalus, status-post shunt placement, revision, and repair, seizures, ocular malalignment/diplopia/loss of visual fields, chronic obstructive pulmonary disease, and headaches (20 CFR 404.1520(c) and 416.920(c)).

6. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that the claimant may frequently handle and finger with the left upper extremity; the claimant may occasionally stoop, crawl, climb ramps and stairs, but may never climb ladders, ropes or scaffolds; the claimant must avoid all exposure to unprotected heights, hazardous machinery, and commercial driving, and must avoid concentrated exposure to fumes, odors, dust, gases and poor ventilation; the claimant may occasionally read book print, news print, or a computer screen.

11. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

12. The claimant has not been under a disability, as defined in the Social Security Act, from June 24, 2015, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that

8

impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Plaintiff raises one issue on appeal: "The ALJ's RFC determination is unsupported by substantial evidence as after rejecting the opinions of the State Agency medical consultants and the opinion of Plaintiff's treating physician Yongjin Chen, M.D., constructed the RFC whole cloth." (ECF No. 16 at 13). Within that issue, Plaintiff raises two sub-issues: 1) Whether the ALJ properly weighed the opinion of Plaintiff's treating physician, Dr. Chen; and 2) Whether the ALJ should have obtained an additional medical opinion to complete the record.

### 1. The ALJ properly weighed the opinion of Plaintiff's treating physician, Dr. Chen.

Plaintiff raised a similar issue in his first appeal, which the previous Court agreed with and remanded for a new hearing. The current appeal deals with the same opinion by Dr. Chen, but a fresh decision by the same ALJ. In Dr. Chen's assessment of Plaintiff's functional limitations, he opined that he could not remember or focus well and that he felt dizzy when standing or walking.

(ECF No. 12, PageID #: 589). Dr. Chen opined that Plaintiff had the ability to stand/walk for two-and-a-half hours to four hours a day, sit for four-and-a-half to six hours a day, and stand/walk/sit for four-and-a-half hours to six hours a day. (ECF No. 12, PageID #: 589). Dr. Chen opined that Plaintiff could lift less than ten pounds. (ECF No. 12, PageID #: 589). As for Plaintiff's mental limitations, Dr. Chen opined that Plaintiff could not remember work locations/procedures, maintain attention/concentration, sustain an ordinary routine, carry out instructions, perform activities with a schedule, or interact with general public. (ECF No. 12, PageID #: 589). Finally, Dr. Chen opined that Plaintiff would not be able to engage in part time employment or even basic hands-on stationary work. (ECF No. 12, PageID #: 589).

Previously, the ALJ gave Dr. Chen's opinion little weight and explained:

> No controlling weight is given to the treating source opinion of Dr. Chen from the Department of Job and Family Services (Exhibit 6F). Dr. Chen determined that the claimant cannot remember well, and he feels dizzy when standing and walking. In addition, Dr. Chen limited him to a range of sedentary level work, with standing/walking for two and a half to four hours per workday, sitting for four and a half to six hours per workday, lifting less than 10 pounds, and an inability to perform all described mental-related work activities, such as carrying out instructions,  interacting with the general public, and sustaining an ordinary routine. Finally, Dr. Chen concluded that the claimant cannot perform even part-time work.  The opinion that the claimant is unable to work is a determination that is reserved for the Commissioner, and this is not a specific statement of functional abilities (20 CFR 404.1527(e), 416.927(e), and SSR 96-Sp). Moreover, these opinions are inconsistent with the medical record as a whole, including the claimant's reported dizziness and other symptoms that have not lasted for 12 or more months at a  time to meet the durational requirements of the Social Security Act, his generally benign diagnostic test results and clinical findings, and his ability to engage in vigorous daily  activities such as going on walks, playing outside with his son, driving, cooking, and gardening  (Exhibit 9F, pg. 3; 14F, pg. 2; hearing testimony).   Finally, Dr. Chen provided little supporting evidence for his extreme limitations aside from largely restating the claimant's diagnoses and subjective allegations, which are not fully consistent with the record for the reasons listed above.

(ECF No. 12, PageID #: 841). The previous court found that the ALJ had "failed to sufficiently articulate good reasons for attributing less than controlling weight to Dr. Chen's opinion" and remanded the matter for further consideration. (ECF No. 12, PageID #: 860). Additionally, the previous Court found that "[t]he ALJ fail[ed] to adequately explain why only little weight, as opposed to great weight or some weight, was attributed to Dr. Chen's opinion." (ECF No. 12, PageID #: 864).

On remand, the matter returned to the original ALJ for an additional hearing and a new decision. Dr. Chen's opinion remained the same. The ALJ again gave Dr. Chen's opinion little weight and explained:

> The claimant's former (17F/2) primary care physician, Yongjin Chen, M.D., indicated, on November 9, 2016, that the claimant could stand and/or walk from two and one-half-to-four hours per day, could sit from four and one-half-to-six hours per day, could lift and carry less than ten pounds, would be unable to remember locations and procedures, maintain attention and concentration, sustain an ordinary routine, carry out instructions, work within a schedule, interact with the public, and could not perform part-time employment or perform hands-on stationary work. Dr. Chen treated the claimant over a lengthy period, prior to the alleged onset date of this claim and until July 2017 (9F). He is reporting within the bounds of his professional certifications, but no discernible specialty. His clinical examinations in late 2014 and early 2015, describe findings as would be expected, given that the claimant was going into shunt failure on the first occasion and was fighting an infection on the second (4F/12, 10), but each of these is prior to the alleged onset date. On two occasions, he describes mild weakness in the left side (9F/3) and left leg (16F/5). He described mild swelling of the right fifth finger on one occasion (16F/7) and a case of poison ivy on another (4F/15). In all four of these instances, and in all others (4F/2, 5, 8), (20F/9), his clinical examinations were either otherwise, or wholly, benign. Likewise, his sole report of psychological findings was entirely benign (4F/16), and even then did not touch upon various of the work-related areas of function on which he comments in this opinion. The severity of the limitations described in the opinion is not consistent with Dr. Chen's own treatment record. Multiple other clinical examinations, one occurring between Dr.

11

Chen's two examinations reporting mild weakness, described preserved strength globally (10F/3). The claimant has described walking miles without difficulty most afternoons (8F/1, 7). Multiple other examinations describe preserved memory (3F/8), (10F/3), concentration and attention (3F/8), (17F/14), judgment and insight (8F/3), (12F/3). The claimant is demonstrably able to function in public settings, such as parks, the post office, stores and church (4E/5-6), (10F/14). Dr. Chen's opinion is not consistent with his own treatment record, and is contradicted by other, substantial, evidence of record. It is not eligible to be considered for controlling weight. The opinion is not consistent with, or supported by, the overall evidence of record, described in digest form in the preceding paragraph, and so is afforded little weight. Of course, his conclusory opinions on the claimant's ability to engage in stationary work or parttime work are among those explicitly, and exclusively, reserved to the Commissioner and his designees, and so is afforded no weight.

(ECF No. 12, PageID #: 746-747).

For claims filed prior to March 27, 2017, such as here, medical opinions are to be weighed by the process set forth in 20 C.F.R. § 404.1527(c). As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), *id.* § 404.1502, 404.1527(c)(1), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "nontreating source"), *id.* § 404.1502, 404.1527(c)(2). In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." Soc. Sec. Rul. No. 96–6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996).

The source of the opinion therefore dictates the process by which the Commissioner accords it weight. Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory

diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, *id.,* as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence, *id.* § 404.1527(c)(2)-(6). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR No. 96–2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004).

### A. The ALJ properly explained the reasons for not giving Plaintiff's treating physician's opinion controlling weight.

As a treating physician, Dr. Chen's opinions were entitled to controlling weight unless it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). Here, the ALJ did not give Dr. Chen's opinion controlling weight because it was not consistent with his own records and was contradicted by other evidence in the record. Specifically, the ALJ explained that the "severity of the limitations described in the opinion is not consistent with Dr. Chen's own treatment record," which describe, at most, mild weakness in Plaintiff's left side and left leg, and mild swelling in his right fifth finger. The ALJ explained that other than these mild findings, Dr. Chen's clinical examinations were mostly benign and "entirely benign" with regards to the psychological findings.

Plaintiff argues that the ALJ did not properly weigh Dr. Chen's opinion by failing to consider "probative evidence [that is] consistent with and supportive of Dr. Chen's opinion." (ECF No. 16 at 16). Specifically, Plaintiff argues that the ALJ failed to consider notes from Plaintiff's April 20, 2015 and May 27, 2015 visits with Dr. Chen. (ECF No. 16 at 15-16). However, the ALJ referenced each of these in her decision. (See ECF No. 12, PageID #: 746-747 (citing Ex. 4F/8 and 4F/10)). Plaintiff also argues that the ALJ failed to consider Dr. Chen's July 26, 2017 notation that Plaintiff was suffering from headaches, dizziness, left sided weakness, and mildly decreased strength in his left leg, arm, and hand. (ECF No. 16 at 16). The ALJ also specifically referenced these notations when explaining why Dr. Chen's opinion was not supported by his records. (ECF No. 12, PageID #: 747). Plaintiff provides no other evidence that the ALJ failed to consider when she determined that the severity of Dr. Chen's opinion is inconsistent with his own records.

Plaintiff argues that the ALJ failed to consider Plaintiff's emergency room visit on April 20, 2015 and a follow up with Dr. Lemonovich May 29, 2015 and that these records support Dr. Chen's opinions. (ECF No. 16 at 15-16). However, the ALJ addressed Plaintiff's April 2015 emergency room visit as well as Plaintiff's follow ups, including the follow up with Dr. Lemonovich, and noted that they pre-date the injury onset date. Additionally, the ALJ described the records as "describ[ing] findings as would be expected, given that the claimant was … fighting an infection."  (ECF No. 12, PageID #: 746-747, 742). Plaintiff cites to no other evidence that the ALJ failed to consider when she determined that the severity of Dr. Chen's opinion is not consistent with or supported by the rest of the record.

Accordingly, the ALJ properly explained why she did not give Dr. Chen's opinion controlling weight.

**B.  The ALJ gave "good reasons" for giving Dr. Chen's opinion little weight.**

14

Upon giving Dr. Chen's opinion less than controlling weight, an ALJ was required to give good reasons for the weight given. 20 C.F.R. § 404.1527(c)(2). In weighing a treating physician's opinion, the ALJ must consider the length, frequency, nature, and extent of the treatment relationship, the treating source's area of specialty, and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence. *Id*. § 404.1527(c)(2)-(6). Here, the ALJ discussed the length, frequency and nature of Dr. Chen's relationship with Plaintiff. (*See* ECF No. 12, PageID #: 746 ("Dr. Chen treated the claimant over a lengthy period, prior to the alleged onset date of this claim and until July 2017 (9F).")). The ALJ discussed Dr. Chen's area of specialty. (ECF No. 12, PageID #: 746 ("He is reporting within the bounds of his professional certifications, but no discernible specialty.")). Finally, the ALJ explained how Dr. Chen's opinion was not consistent with or supported by the record evidence. (ECF No. 12, PageID #: 746 ("Multiple other clinical examinations, one occurring between Dr. Chen's two examinations reporting mild weakness, described preserved strength globally (10F/3). The claimant has described walking miles without difficulty most afternoons (8F/1, 7). Multiple other examinations describe preserved memory (3F/8), (10F/3), concentration and attention (3F/8), (17F/14), judgment and insight (8F/3), (12F/3). The claimant is demonstrably able to function in public settings, such as parks, the post office, stores and church (4E/5-6), (10F/14).")).

Accordingly, the ALJ gave good reasons for giving little weight to Dr. Chen's opinion.

## 2. The ALJ should have obtained an updated medical opinion.

Plaintiff also argues that the ALJ erred by failing to obtain an "updated medical opinion to interpret the raw medical data" and that by failing to do so she improperly "interpreted the raw medical data herself to reach conclusions of functionality." (ECF No. 16 at 19).

The ALJ's determined Plaintiff's disability status from June 24, 2015, through the date of the decision, September 22, 2020. The ALJ reviewed Plaintiff's medical records through at least May 8, 2020 (ECF No. 12, PageID #: 755-756). The expert opinions reviewed by the ALJ included the September 21, 2015 opinion of State Agency reviewing physician Dr. Knierim, the January 29, 2016 opinion of State agency reviewing physician Dr. Hallet on reconsideration, and the November 9, 2016 opinion by Dr. Chen. (ECF No. 12, PageID #: 745-747). The ALJ did not adopt any of these three opinions. (ECF No. 12, PageID #: 746-747).

Plaintiff claims that by rejecting each of the three expert opinions, she was left with no medical opinion regarding Plaintiff's ability to function and, therefore, needed to appoint a medical consultant to review the records. Additionally, Plaintiff claims the ALJ erred by not appointing a medical expert to review the medical evidence that is dated following the date of the rejected expert opinions and by "interpret[ing] the raw medical data herself to reach conclusions of functionality." (ECF No. 16 at 19). The Commissioner argues that the RFC is supported by substantial evidence.

An ALJ is not required to base her RFC on any one medical opinion. *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018) (holding that the ALJ was not required to obtain an opinion from another physician after assigning no weight to a medical opinion in the record). Plaintiff relies on *Falkosky v. Comm'r of Soc. Sec.*, to support his argument that the ALJ was required to obtain a medical opinion to complete the record after rejecting the three opinions in evidence. (*See* ECF No. 16 at 17 (citing No. 1:19-CV-2632, 2020 WL 5423967 (N.D. Ohio Sept. 10, 2020)). *Falkosky* is distinguishable from this case as "Falkosky's record contained no medical opinions on his functional limitations. Thus, the ALJ had no medical opinions on Falkosky's functional abilities to evaluate. And any evidence of Falkosky's condition that he cited to support his RFC finding necessarily supported only his own lay conclusion regarding Falkosky's

16

functional capacity." *Falkosky*, 2020 WL 5423967, at *7.[2] Here, the ALJ had three opinions that specifically addressed Plaintiff's functionality. Dr. Knierim opined that Plaintiff could lift/carry up to 20 pounds occasionally and 10 pounds frequently, stand/walk about six hours of an eight-hour workday, sit about six hours of an eight-hour workday, occasionally climb ramps/stairs, and never climb ladders/ropes/scaffolds. (ECF No. 12, PageID #: 166-168). Dr. Knierim also opined that Plaintiff's diplopia limited his depth perception to occasional and that he should at all times avoid all exposure to hazards such as unprotected heights and heavy machinery. (ECF No. 12, PageID #: 166-168). On reconsideration, Dr. Hallet's affirmed Dr. Knierim's opinions on Plaintiff's functional limitations. (ECF No. 12, PageID #: 177-179). As detailed above, Dr. Chen also opined as to Plaintiff's functional limitations. The ALJ incorporated into the RFC many of the limitations opined by each of the experts. For example, although the limitations set forth by the state agency opinions meant that Plaintiff could engage in light work, the ALJ adopted the more severe limitation from Dr. Chen by finding that Plaintiff could engage in sedentary work.[3] The ALJ also incorporated into the RFC the State Agency opinions' postural and environmental limitations and explained why on other occasions the Plaintiff required more restrictive limitations that those opined by them. Instead of not having any opinions on functional limitations as in *Falkosky*, the ALJ here had three and determined an RFC that fell somewhere between the severe

---

[2] Falkosky's records were reviewed by state agency reviewing physicians who "recognized that [Falkosky] had the impairment of carpal tunnel syndrome during the relevant time period and found that there was insufficient evidence to determine how that impairment affected his functional abilities." *Falkosky*, at *6. Thus, although the physicians reviewed Falkosky's records, each declined to opine on his functional abilities.

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." C.F.R. § 404.1567(a).

limitations of Dr. Chen and the less severe limitations of the state agency reviewing physicians. An ALJ's RFC determination may be supported by substantial evidence, even if no "physician offers an opinion consistent with that of the ALJ." *Mokbel-Aljahmi,* 732 F. App'x at 401; *see also Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442–43 (6th Cir. 2017); *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (reasoning that requiring the "ALJ to base her RFC finding on a physician's opinion, 'would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled' ").

Plaintiff's argument that by not adopting any of the three medical opinions, the ALJ was left with no medical opinion at all is not well-taken. The opinions did not cease to exist simply because the ALJ did not adopt them. Instead, the ALJ considered them in crafting the RFC. Her refusal to base the RFC off a single medical opinion does not, alone, constitute error.

Nonetheless, this Court's inquiry, and Plaintiff's argument for error, is not concluded.

The ALJ's decision determined Plaintiff's disability status from June 24, 2015, through the date of the decision, September 22, 2020. The ALJ reviewed Plaintiff's medical records through at least May 8, 2020. (See ECF No. 12, PageID #: 755-756). The expert opinions reviewed by the ALJ, however, were dated September 21, 2015, January 29, 2016, and November 9, 2016 opinion by Dr. Chen.

Plaintiff argues that the ALJ erred by not obtaining an additional medical opinion to develop the record. (ECF No. 16 at 17 (citing *Harper v. Comm'r of Soc. Sec.*, No. 1:20-CV-1304, 2021 WL 2383833, at *13–14 (N.D. Ohio May 25, 2021), *report and recommendation adopted*, No. 1:20-CV-1304, 2021 WL 2381906 (N.D. Ohio June 10, 2021); *Deskin v. Comm'r of Soc. Sec.*,

605 F. Supp. 2d 908 (N.D. Ohio 2008); *Falkosky*, 2020 WL 5423967, at *6, *Kizys v. Comm'r of Soc. Sec.*, No. 3:10 CV 25, 2011 WL 5024866, at *1-2 (N.D. Ohio Oct. 21, 2011) (An ALJ's decision is not supported by substantial evidence if the ALJ must interpret a substantial portion of the medical evidence without the assistance of a medical opinion.)). The Commissioner argues that *Kizys* (and associated cases) does not apply because there is not a "total absence of a medical source assessment" given Dr. Chen's opinion. (ECF No. 19 at 17). However, *Kizys* also applies in instances where "an ALJ makes a finding ... based on … an outdated source opinion that does not include consideration of a critical body of objective evidence." *Id*. at *2.

The ALJ has a basic obligation to develop a full and fair record. *Lashley v. Sec'y of Health and Hum. Servs*., 708 F.2d 1048, 1051 (6th Cir. 1983). In *Deskin*, a sister court reviewed a case in which there was only one medical opinion from a state agency reviewing physician who reviewed the record two years before the ALJ made an RFC finding and without the benefit of two years' worth of medical records. 605 F. Supp. 2d 908. The *Deskin* court set forth the following rule:

> ...[when] the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations (or only an outdated nonexamining agency opinion), to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing. This responsibility can be satisfied without such opinion only in a limited number of cases [in which] the medical evidence shows relatively little physical impairment and an ALJ can render a commonsense judgment about functional capacity.

*Id*. at 912 (quotation marks and citation omitted). After some criticism from other district courts in the Sixth Circuit, the *Deskin* court clarified its decision. *See Kizys*, 2011 WL 5024866. *Kizys* clarified that *Deskin* potentially applies in only two circumstances: 1) when an ALJ made an RFC determination based on no medical source opinion; or 2) when an ALJ made an RFC based on an "outdated" medical source opinion "that does not include consideration of a critical body of

19

objective medical evidence." *See Kizys*, 2011 WL 5024866, at \*2; *see also Raber v. Comm'r of Soc. Sec.*, No. 4:12-cv-97, 2013 WL 1284312, at \*15 (N.D. Ohio Mar. 27, 2013) (explaining post-*Deskin* application of the rule). Although not controlling, some courts have found that "[g]iven the persuasive authority of *Deskin* and the decade-plus of cases that have applied the *Deskin* 'rule,' … in some circumstances, an ALJ is required to obtain a medical opinion in furtherance of his 20 CFR § 404.1545(a)(3) responsibility to develop the record." *Falkosky*, 2020 WL 5423967, at \*6. "Without doubt, it is the ALJ's responsibility (not a physician's) to determine a claimant's RFC based on the evidence as a whole. Equally clear is the claimant's burden to produce evidence in support of his claim." *Id*. "[O]nce it is determined that the evidence supports a finding of a severe impairment, the ALJ may be obligated to develop a record that provides substantial evidence supporting his or her RFC finding. The question then becomes, 'did the ALJ have a responsibility to further develop the record in this case?'" *Id*.

The Commissioner argues that *Deskin* and its progeny are inconsistent with Sixth Circuit precedent. (*See* ECF No. 19 at 18 (citing *Schwartz v. Saul*, No. 3:20-cv-01097-JJH, 2021 WL 3566585, at \*12 (N.D. Ohio June 30, 2021) (R&R adopted and rejected in part, 2021 WL 3149095, at \*3 (July 27, 2021)); *Van Pelt v. Comm'r of Soc. Sec.*, No. 1:19-cv-2844, 2020 WL 7769729, at \*10 (N.D. Ohio Dec. 30, 2020); *Evans v. Comm'r of Soc. Sec.*, No. 1:18-CV-632, 2019 WL 3927507, at \*8-9 (S.D. Ohio, Aug. 20, 2019); *Henderson v. Comm'r of Soc. Sec.*, No. 1:08-CV-2080, 2010 WL 750222, at \*2 (N.D. Ohio Mar. 2, 2010); *Williams v. Astrue*, No. 1:11-cv-2569, 2012 WL 3586962, at \*7 (N.D. Ohio Aug. 20, 2012)). Indeed, this Court has recognized that "[o]ther courts within this District have [ ] declined to follow *Deskin*." *Adams v. Colvin*, No. 1:14CV2097, 2015 WL 4661512, at \*15 (N.D. Ohio Aug. 5, 2015) (citing *Jackson v. Comm'r of Soc. Sec.*, 2014 WL 2442211 at \*6 (N.D. Ohio May 30, 2014) (McHargh, M.J.); *Williams v. Astrue*,

2012 WL 3586962 at *7 (N.D. Ohio Aug. 20, 2012) (Vecchiarelli, M.J.); *Strimpel v. Astrue*, 2012 WL 4060744 at *9 (N.D. Ohio Sept. 14, 2012) (Vecchiarelli, M.J.)). Nonetheless, *Deskin* remains persuasive authority and this Court find that it applies to the facts of this case. *See Harper*, 2021 WL 2383833, *14 ("*Deskin* isn't controlling and serves only as persuasive authority.").

Plaintiff's appeal involves the second *Deskin* circumstance because although there were three medical opinions, Plaintiff argues that evidence submitted after those opinions contained critical objective medical evidence, including "raw" medical data, which required the assistance of a medical professional to interpret. The most recent review of Plaintiff's medical records was conducted by Dr. Hallet who issued his opinion on January 29, 2016. Plaintiff underwent significant medical treatment for over four years following Dr. Hallet's opinion. This treatment included numerous visits for neurosurgical follow-ups with Dr. Sweet, visits to the emergency room for issues related to his severe impairments, follow-up visits with Dr. Chen for issues related to his severe impairments, encounters with Dr. Richard Josephson for cardiovascular evaluation, dyspnea, and pulmonary evaluation, and treatments with Dr. Mustafa Abas for dyspnea and COPD. These visits also included additional diagnostic testing including x-rays of Plaintiff's skull and chest related to his shunt revision (ECF No. 12, PageID #: 612-613), an echocardiogram (ECF No. 12, PageID #: 613), and a CT scan indicating "[d]iffuse supratentorial cortical volume loss/supratentorial nonspecific white matter changes" (ECF No. 12, PageID # 1145). Nonexistent, however, is a medical opinion regarding how Plaintiff's symptoms and impairments affect his functionality for the period between January 29, 2016 and the hearing date of September 17, 2020.

It is reasonable – and expected – for there to be a period of time between the last opinion regarding a claimant's functionality and the date of the decision. In this case, Plaintiff's claimed he became disabled beginning June 25, 2015. The most recent medical review of the entirety of

Plaintiff's medical records was January 2016. For the next four years, Plaintiff continued to treat for persistent symptoms *and* Plaintiff underwent multiple diagnostic testing. The Court acknowledges that the ALJ referenced many of Plaintiff's post-January 2016 medical treatment in her decision. Nonetheless, this Court has held that "Courts are generally unqualified to interpret raw medical data and make medical judgments concerning the limitations that may reasonably be expected to accompany such data." *Alexander v. Kijakazi*, No. 1:20-CV-01549, 2021 WL 4459700, at *9 (N.D. Ohio Sept. 29, 2021); *see Mascaro v. Colvin*, No. 1:16CV0436, 2016 WL 7383796, at *11 (N.D. Ohio Dec. 1, 2016) (noting neither the ALJ nor the court had the medical expertise to conclude whether the results of a neurological exam necessarily ruled out the existence of a disabling condition). Additionally, where an ALJ has opinions that account for the majority of the medical evidence, an ALJ may reasonably make judgments on the supportability and consistency of the medical opinions and can adopt an RFC accordingly. *See Kizys*, 2011 WL 5024866, at *2. However, "where a 'critical body' of the 'objective medical evidence' is not accounted for by a medical opinion and there is significant evidence of potentially disabling conditions, the ALJ should develop the record by obtaining opinion evidence that accounts for the entire relevant period." *McCauley v. Comm'r of Soc. Sec.*, No. 3:20-CV-13069, 2021 WL 5871527, at *14–15 (E.D. Mich. Nov. 17, 2021), report and recommendation adopted, No. 20-CV-13069, 2021 WL 5867347 (E.D. Mich. Dec. 10, 2021) (citing *Branscum v. Berryhill*, No. 6:17-CV-345, 2019 WL 475013, at *11 (E.D. Ky. Feb. 6, 2019)).

The record contains three opinions: one from Dr. Knierim dated September 21, 2015, one from Dr. Hallet on January 29, 2016, and one from Dr. Chen on November 9, 2016 opinion by Dr. Chen. However, Plaintiff has provided medical records through May 2020. Over four years of medical records were not considered in either State Agency opinion. These four years of records

contain a "critical" portion of the record as they contain numerous examples of Plaintiff's ongoing symptoms as well as diagnostic tests. Because the ALJ had no medical opinions on the Plaintiff's functional abilities for the majority of the period of disability at issue – four out of the five years examined by the ALJ, and because the ALJ's RFC finding was based on the ALJ's lay conclusion concerning Plaintiff's reported symptoms and diagnostic testing, the Court finds that the ALJ had a duty to more fully develop the record. Accordingly, on remand, the ALJ must obtain additional opinion evidence regarding Plaintiff's impairments.

## VI. Conclusion

Based on the foregoing, the Commissioner of Social Security's nondisability finding is REVERSED and the matter is REMANDED consistent with this Memorandum of Opinion and Order.

**IT IS SO ORDERED.**

Dated: March 11, 2022

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

23